# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action No. 17- 88 |
| MICHAEL BOYCE, | ) REDACTED ) ) |
| Defendant. | ) |

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### COUNT 1

### (Wire Fraud)

*Background*

At all times relevant to this Indictment:

1. Beginning in or around 1987, Michael Boyce ("BOYCE") was employed in the Information Technology (IT) Department of COMPANY A, a manufacturing company, located in New Castle County, Delaware. While he was originally employed as a computer programmer, BOYCE became the Manager of Information Systems, and, in or around late 2014, COMPANY A promoted BOYCE to Director of the IT Department. BOYCE worked in that capacity until he was fired on or about July 1, 2016.

2. COMPANY A used the AS400 computer system, a system designed for use by small and mid-sized businesses. BOYCE's responsibilities included ensuring the AS400 system was running, saving data to backup tapes, and overseeing the functioning of COMPANY A's computer hardware, printers, and bar coding equipment. In connection with these responsibilities, BOYCE was able to purchase both maintenance services and supplies for

COMPANY A's equipment, including ink, thermal labeling materials, and thermal ribbons.

3. When requesting supplies for the IT Department, COMPANY A required completion of a purchase order. Prior to in or around February 2016, employees of COMPANY A could use manual purchase orders, that is, purchase orders outside of COMPANY A's standard system. In order to obtain approval for a purchase, BOYCE would complete and sign his purchase order request. Until late 2014, when BOYCE became the head of the IT Department, these manual requests also required the signature of BOYCE's supervisor in the IT Department. Once BOYCE became head of the IT Department, BOYCE did not need another signature to approve his purchase orders.

4. In or around February 2016, COMPANY A implemented a new process for purchase orders, designed to minimize the use of manual purchase orders. On or about February 1, 2016, COMPANY A sent a memo to its managers describing the new process. For any purchase order generated outside of COMPANY A's standard system, the requester would be required to complete a purchase requisition form. This form would require both a supplier quote and COMPANY A approval prior to processing.

5. COMPANY A required the verified packing list as a part of its accounts payable process. Typically, when COMPANY A received requested supplies, these supplies would be accompanied by a packing list. For the IT Department, SHIFT SUPERVISOR A would receive and restock the supplies. After confirming receipt of the items on the packing list, SHIFT SUPERVISOR A would initial the packing list, thus verifying it.

6. SHIFT SUPERVISOR A was also responsible for tracking supply inventory for the IT Department. In order to track the supply level of frequently used products, (often referred to as "consumables,") SHIFT SUPERVISOR A maintained a color-coded spreadsheet. On a

weekly basis, SHIFT SUPERVISOR A would send this spreadsheet to another IT Department employee, the DATA CENTER SUPERVISOR. The DATA CENTER SUPERVISOR would then order the necessary consumables in order to restock inventory. SHIFT SUPERVISOR A ordered all of the necessary consumables through the DATA CENTER SUPERVISOR, and did not request that BOYCE order consumables for the IT Department.

*Scheme and Artifice to Defraud*

7. Beginning in or around 2004, and continuing through on or about September 6, 2016, BOYCE engaged in a scheme and artifice to defraud COMPANY A whereby BOYCE would create fake purchase orders, purportedly to purchase supplies from two companies, SUPPLIER A, located in Springfield, Pennsylvania, and, beginning in or around 2009, SUPPLIER B, located in Boothwyn, Pennsylvania. BOYCE would then create additional documentation showing that the supplies had been received by COMPANY A, and would submit invoices for payment.

8. Believing these to be legitimate purchases made and received, COMPANY A would then issue checks in payment to SUPPLIER A and SUPPLIER B. The principals of SUPPLIER A and SUPPLIER B would then write checks to BOYCE or Data Vault, a sole proprietorship formed, owned, and maintained by BOYCE.

SUPPLIER A

9. SUPPLIER A was a sole proprietorship, whose principal, OWNER A, was engaged in the business of providing computer services. SUPPLIER A provided computer services to COMPANY A beginning in or around 1997. Prior to that time OWNER A provided computer services to COMPANY A, through his prior employer.

10. In or around 2000, OWNER A approached BOYCE about providing consumables to COMPANY A. At BOYCE's request, OWNER A prepared a bid. After reviewing the bid,

BOYCE informed OWNER A that he could do better himself on pricing. OWNER A then offered to share the profits of any sales with BOYCE. Shortly thereafter, BOYCE and OWNER A began splitting the profits on any consumables ordered through SUPPLIER A.

11. From in or around 2000 through in or around the middle of 2004, BOYCE would order consumables from SUPPLIER A. SUPPLIER A would then have those consumables shipped directly to COMPANY A. SUPPLIER A billed COMPANY A for those consumables and, after receiving payment, OWNER A would write a check to BOYCE for his share of the profits.

12. In or around the middle of 2004, BOYCE advised OWNER A that BOYCE would take over sourcing and supplying the consumables to COMPANY A. BOYCE represented to OWNER A that he could receive better pricing than SUPPLIER A. BOYCE requested that SUPPLIER A continue to issue bills to COMPANY A as if SUPPLIER A continued to source and supply consumables to COMPANY A, even though SUPPLIER A no longer did.

13. Beginning in or around 2004, BOYCE would contact OWNER A by telephone at OWNER A's business number in Pennsylvania and provide COMPANY A's purchase order number, quantities and descriptions of consumables, and prices. OWNER A would then create and issue a SUPPLIER A invoice to COMPANY A, either by facsimile or by electronic mail, based on the information that BOYCE conveyed to OWNER A.

14. Once SUPPLIER A received payment from COMPANY A, OWNER A would write checks to BOYCE and BOYCE's company, Data Vault, transferring the majority of the payment from COMPANY A to BOYCE and Data Vault.

SUPPLIER B

15. In or around 2009, BOYCE approached OWNER B, who he knew through a family member. BOYCE proposed that he set up a business, SUPPLIER B, on behalf of OWNER B. He then asked OWNER B to open a separate bank account in the name of SUPPLIER B. BOYCE told OWNER B that BOYCE was ordering supplies and providing them to COMPANY A. BOYCE further told OWNER B that he did not want COMPANY A to know of his own involvement in purchasing supplies because BOYCE was employed by COMPANY A.

16. OWNER B never prepared or sent any invoices to COMPANY A. However, OWNER B regularly received checks from COMPANY A made payable to SUPPLIER B. When OWNER B received payments from COMPANY A, OWNER B would then write checks to BOYCE and BOYCE's company, Data Vault, transferring the majority of the payment from COMPANY A to BOYCE and Data Vault..

17. With very few exceptions, the consumables listed on the invoices from SUPPLIER A and SUPPLIER B were not, in fact, supplied by BOYCE to COMPANY A. In some instances, the items listed on the invoices were not even used by COMPANY A.

18. After receiving or generating invoices from SUPPLIER A and SUPPLIER B, BOYCE would create manual purchase orders. In order to make it appear that he had the necessary approvals, BOYCE forged the signature of his supervisor. BOYCE further created packing lists to attach to payment requests in order to make it appear that the consumables had been delivered to COMPANY A, when in truth and in fact, no such consumables had ever been supplied to COMPANY A.

19. Between 2005 through 2016, COMPANY A issued checks to SUPPLIER A totaling approximately $4,245,823. Between on or about March 4, 2009 and on or about August

31, 2016, COMPANY A issued checks to SUPPLIER B totaling approximately $2,350,887.

*Charging Paragraph*

20. From in or around 2004 to on or about September 6, 2016, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, having devised and intending to devise a scheme and artifice to defraud, as described in paragraphs 1 through 19 above, incorporated herein by reference, and for the purposes of executing such scheme and artifice to defraud and for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, did knowingly transmit and cause to be transmitted by means of a wire communication in interstate commerce, as set forth below, including, but not limited to, the following:

- On or about February 28, 2009, an email from kBilling Software to BOYCE's COMPANY A email account;

- On or about August 14, 2014, an email from OWNER A to BOYCE's COMPANY A email account;

- On or about August 13, 2015, an email from BOYCE's COMPANY A email account to OWNER A;

- On or about August 14, 2015, an email from OWNER A to BOYCE's COMPANY A email account;

- On or about February 8, 2016, an email from a Gmail account in the name of SUPPLIER B to BOYCE's COMPANY A email account; and

- On or about June 30, 2016, an email from BOYCE's COMPANY A email account to the CEO of COMPANY A's email account.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

### (Money Laundering)

21. Paragraphs 1-19 are fully incorporated herein.

22. On or about June 2, 2016, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did knowingly engage in and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is BOYCE obtained an official check in the amount of $90,000, drawn on BOYCE's personal Sun East Federal Credit Union account, such property having been derived from specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT THREE

### (Money Laundering)

23. Paragraphs 1-19 are fully incorporated herein.

24. On or about July 23, 2014, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did knowingly engage in and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is BOYCE obtained an official check from M&T Bank in the amount of $66,066.00, drawn on BOYCE's personal M&T bank account such property having been derived from specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT FOUR

### (False Statement to a Financial Institution)

25. On or about April 16, 2012, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, knowingly made a material false statement for the purpose of influencing the action of Wells Fargo Bank, N.A., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, or loan, in that the defendant represented that Data Vault had gross sales of $313,032 for the time period January 1, 2012 through March 31, 2012, when, in truth and in fact, as the defendant well knew, Data Vault had no sales, rather all Data Vault income reflected illegal income, specifically, the proceeds of the scheme set forth at Paragraphs 1-19 and fully incorporated herein.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIVE

### (False Statement to a Financial Institution)

26. On or about September 19, 2012, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein knowingly made a material false statement for the purpose of influencing the action of Wells Fargo Bank, N.A., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, or loan, in that the defendant included, as income, his self-employment income from Data Vault, when in truth and in fact, as the defendant well knew, all BOYCE's income from Data Vault was not from employment but was the proceeds of the scheme set forth at Paragraphs 1-19 and fully incorporated herein.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FOUR

### (False Statement to a Financial Institution)

25. On or about April 16, 2012, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, knowingly made a material false statement for the purpose of influencing the action of Wells Fargo Bank, N.A., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, or loan, in that the defendant represented that Data Vault had gross sales of $313,032 for the time period January 1, 2012 through March 31, 2012, when, in truth and in fact, as the defendant well knew, Data Vault had no sales, rather all Data Vault income reflected illegal income, specifically, the proceeds of the scheme set forth at Paragraphs 1-19 and fully incorporated herein.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIVE

### (False Statement to a Financial Institution)

26. On or about September 19, 2012, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein knowingly made a material false statement for the purpose of influencing the action of Wells Fargo Bank, N.A., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, or loan, in that the defendant included, as income, his self-employment income from Data Vault, when in truth and in fact, as the defendant well knew, all BOYCE's income from Data Vault was not from employment but was the proceeds of the scheme set forth at Paragraphs 1-19 and fully incorporated herein.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT SIX

### (Tax Evasion)

27. Paragraphs 1-19 are fully incorporated herein.

28. On or about February 15, 2013, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did willfully attempt to evade and defeat a substantial amount of the income tax due and owing by him to the United States of America for tax year 2012, by filing and caused to be filed with the Internal Revenue Service, a false and fraudulent Individual Income Tax Return Form 1040, specifically BOYCE failed to disclose approximately $396,474.00 in taxable income, and the additional income tax amount due and owing thereon of approximately $146,609.00, in violation of Title 26, United States Code, Section 7201.

## COUNT SEVEN

### (Tax Evasion)

29. Paragraphs 1-19 are fully incorporated herein.

30. On or about February 22, 2014, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did willfully attempt to evade and defeat a substantial amount of the income tax due and owing by him to the United States of America for tax year 2013, by filing and caused to be filed with the Internal Revenue Service, a false and fraudulent Individual Income Tax Return Form 1040, specifically BOYCE failed to disclose approximately $410,565.00 in taxable income, and the additional income tax amount due and owing thereon of approximately $151,225.00, in violation of Title 26, United States Code, Section 7201.

## COUNT EIGHT

### (Tax Evasion)

31. Paragraphs 1-19 are fully incorporated herein.

32. On or about February 10, 2015, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did willfully attempt to evade and defeat a substantial amount of the income tax due and owing by him to the United States of America for tax year 2014, by filing and caused to be filed with the Internal Revenue Service, a false and fraudulent Individual Income Tax Return Form 1040, specifically BOYCE failed to disclose approximately $379,856.00 in taxable income, and the additional income tax amount due and owing thereon of approximately $146,145.00, in violation of Title 26, United States Code, Section 7201.

## COUNT NINE

### (Tax Evasion)

33. Paragraphs 1-19 are fully incorporated herein.

34. On or about February 5, 2016, in the District of Delaware and elsewhere, MICHAEL BOYCE, defendant herein, did willfully attempt to evade and defeat a substantial amount of the income tax due and owing by him to the United States of America for tax year 2015, by filing and caused to be filed with the Internal Revenue Service, a false and fraudulent Individual Income Tax Return Form 1040, specifically BOYCE failed to disclose approximately $295,012.00 in taxable income, and the additional income tax amount due and owing thereon of approximately $136,239.00, in violation of Title 26, United States Code, Section 7201.

## **NOTICE OF FORFEITURE**

Upon conviction of the offense alleged in Count One of this Indictment, MICHAEL BOYCE, defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. Section 981(a)(1)(c) and 28 U.S.C. Section 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation. Upon conviction of the offenses alleged in Counts Two and Three of this Indictment, MICHAEL BOYCE, defendant herein shall forfeit to the United States, pursuant to 18 U.S.C. Section 982(a)(1), any property involved in the violations or traceable to property involved in said violations. Upon conviction of the offenses alleged in Counts Four and Five of this Indictment, MICHAEL BOYCE, defendant herein shall forfeit to the United States, pursuant to 18 U.S.C. Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations. Such property shall include, but is not limited to:

(a) the real property located at 1611 Wesley Avenue, Ocean City, New Jersey.

If the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL:


_____
Foreperson

DAVID C. WEISS
ACTING UNITED STATES ATTORNEY

BY:   _____
Lesley F. Wolf
Assistant United States Attorney


Dated:   December 19, 2017